UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JERMC LTD., and JERMC MANAGEMENT, CORP., *Plaintiffs*, -vs- TOWN OF REDINGTON SHORES, JAMES DENHARDT, MARY PALMER, STEVEN ANDREWS, JOSEPH WALKER, LELAND HOLMES, BERTRAM ADAMS, MARYBETH HENDERSON, THOMAS KAPPER, and JEFFERY NEAL. *Defendants*. | CASE NO.: 20-cv-02215 (TPB)(AAS) |

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Plaintiffs move for a protective order and to quash Defendants' subpoena for the deposition of Plaintiffs' longtime counsel, Jacqueline S. Kafedjian, Esq, which lists eighty (80) separate matters for inquiry. Plaintiffs object to this deposition on the grounds that: (1) Ms. Kafedjian has no first-hand personal knowledge regarding the issues which Defendants seek to depose her about, notwithstanding Defendants conjecture to the contrary; (2) that the information Defendants seek is obtainable from other sources and/or is cumulative of paper and deposition discovery already obtained from the Plaintiffs and third parties, (3) that such testimony will require counsel to violate the attorney client privilege, duty of confidentiality, and work

product doctrine; and (4) that such a deposition is unduly burdensome, annoying, and needlessly harasses Plaintiffs in furtherance of Defendants' improper and quixotic quest to disqualify Ms. Kafedjian.

**PROCEDURAL AND FACTUAL BACKGROUND**

1. Defendants served three versions of the subpoena, the last being served on April 22, 2021. (Ex. 1, Second Amended Subpoena at pp. 1-17.)[1]

2. The subpoenas did not request the production of any documents. (Id.)

3. Neither the original subpoena, nor the first amended subpoena, included a scope of inquiry. (Id. at pp. 18-23.) Plaintiffs requested Defendants to include an intended scope of inquiry, so that Plaintiffs may duly respond in this motion, and initially, Defendants refused to do so. (Ex. 2, pp. 16-18.)

4. After Plaintiffs were ready to file their motion, Mr. Scarritt stated that he "reconsidered," and then served a Second Amended Subpoena with a fourteen-page attachment outlining 80 expansive areas of inquiry of Ms. Kafedjian spanning over the course of twenty years, dating back to 2000 when Ms. Kafedjian was still in high school. (Ex. 1, 1-17.; Ex. 2, pp. 22-24.) Plaintiffs hoped that specification of the areas of inquiry would narrow this dispute, but Defendants do not even pretend to narrow

[1] The original subpoena requested a two-day appearance, on June 14th and 15th, which violated the seven-hour limit. (Id at pp. 7-9.) Plaintiffs objected to this notice, whereupon Mr. Scarritt agreed that the deposition would be limited to one day, which is in any event required by the Federal Rules, but then purported to require Ms. Kafedjian to proceed without a lunch break. (Ex. 2, pp. 17-19.)

or tailor the topics of inquiry, and instead serve a list of topics more appropriate for a party or corporate representative deposition.

5. Defendants' laundry list subpoena is an unabashed effort to annoy, harass, and unduly burden the Plaintiffs and this Court to the greatest extent possible, notwithstanding this Court's repeated warnings.

6. Defendants have not even availed themselves to the additional seven-hour deposition of the Plaintiffs' principal, Mr. Antonious, which they moved this Court to compel, and which was granted. (Dkt. #61, pp. 2.)

7. Secondly, Defendants claim that Ms. Kafedjian is a fact and damage "witness," but they have failed to demonstrate that counsel for Plaintiffs' counsel has any **first-hand knowledge** about the matters which they wish to inquire about.

8. Thirdly, Defendants acknowledge that Mr. Antonious is a knowledgeable witness, but fail to demonstrate that Ms. Kafedjian has any knowledge that cannot be obtained from Mr. Antonious himself, though their subpoenas of third-parties, or through document production. To date, Defendants have deposed Mr. Antonious for three days, Mrs. Antonious, as well as four other non-party witnesses. Plaintiffs have also produced almost 25,000 pages in documents thus far.

9. Defendants pursue testimony from Plaintiffs' counsel about knowledge she acquired by virtue of her role as the attorney of the JERMC entities since on or about 2009, and also, which she acquired by virtue of her role as an attorney in the instant

action. Ms. Kafedjian is ethically bound from revealing such matters under the Rules Regulating The Florida Bar ("RRTFB").

10. Mr. Scarritt has acknowledged on numerous occasions that he does not "envy" how burdensome this deposition will be on Plaintiffs.[2] Moreover, each time Mr. Scarritt mentions the proposed deposition, he also states that Defendants seek to disqualify Ms. Kafedjian from serving as counsel for Plaintiffs at trial. In doing so, Mr. Scarritt misrepresents Rule 4-3.7, which, by its terms, cannot be used to impose a substantial hardship, and absolutely cannot be used to disqualify counsel when the opposing party seeks the testimony. (See e.g. Ex. 2, pp. 3, 12; and Dkt. #109, Hearing Transcript 3-29-21, pp. 44:15-21.)

11. What is most troubling, however, is that Defendants have made unfounded representations to this Court regarding the issues in question, which are based on mere speculation, and seemingly, are even intentionally misleading.

12. The laundry list of 80 expansive items of inquiry included in the subpoena far surpass the representations of Mr. Scarritt regarding the intended scope of Ms. Kafedjian's inquiry made to the Court at the Discovery Conference Hearing on

[2] "We anticipate that you will be challenged during the deposition to be able to distinguish between information you know as a fact/damage witness, and information you know as an advocate. I do not envy you this task, but we will work with you in advance of the deposition to establish agreed ground rules for the process you will use to account for each. I anticipate extensive court involvement, which would be expected in any case when a witness is also serving as a lawyer." (Ex. 2, pp. 12.) "And, yes, I do agree with Mr. Beltran on one single issue and that is that she is going to have a difficult time trying to figure out what she knows as an attorney and what she knows as a witness and Mr. Beltran is going to have a real challenge trying to assert privilege when the knowledge that she has is supposedly privileged." (Dkt. #109, Hearing Transcript 3-29-21, 43:17-22.)

March 29, 2021, and his written submissions in the parties' Joint Notice submitted in connection thereto (Dkt. #86, corrected at Dkt. #87-2). At the Discovery Hearing, Mr. Scarritt stated, in relevant part, the following with respect to the basis of their deposition of Ms. Kafedjian:

> The reason that we want to take the deposition is not to disqualify her, but because she is perhaps one of the most knowledgeable fact and damage witnesses in the case. We're anxious to test their theory that the defendants' bad acts resulted in the financial ruin of the plaintiffs to the down of *(sic)* millions of dollars rather than from other unrelated factors. We've hired financial experts, Your Honor, who are going to help us identify the financial documents that we need to be able to do this analysis and Ms. Kafedjian's deposition is critical to this. She is a tax attorney in the State of New York. She's been intimately familiar with the financial status of the Redington Beach Long Pier since her parents' corporations first owned and managed it, which I would venture a guess was long before she became a lawyer. She is -- we've never said that we're taking her deposition to disqualify her. Never said that. But I am somewhat amazed that she is perhaps a limited partner in one of the plaintiffs and she doesn't expect to be deposed. She knows more about the financial aspect of this case than anyone else…. (Dkt. #109, Hearing Transcript 3-29-21, pp. 42:22 – 43:17.)

13. Mr. Scarritt states that Defendants seek to depose Ms. Kafedjian because she is *"critical"* to test the *"theory that the defendants' bad acts resulted in the financial ruin of the plaintiffs."* (Id at 42:25 – 43:2, 43:6-7.)[3] Mr. Scarritt goes on to state that Ms. Kafedjian is a *"fact and damage witness in the case,"* and claims that she is *"has been intimately familiar with the financial status of the Redington Beach Long Pier since her parents' corporations first owned and managed it*." (Id at 43:7-10.) But Mr. Scarritt has

[3]Defendants fail to allege, either in their previous answers or in any of their correspondence or oral communications, any supposed "bad acts" by Plaintiffs.

provided ***no*** support for his speculative contentions other than the fact that she practices Tax Law in New York.

14. When the JERMC entities were formed and purchased the Pier in 2000, Ms. Kafedjian had just graduated high school, and she had no part in this process whatsoever. (Ex. 3, Kafedjian Dec. ¶2-3.)

15. Moreover, the undersigned practices as a Tax Attorney in the State of New York, and she is admitted to practice in the U.S. Tax Court, but she is not "licensed" as a tax attorney as such. (Ex. 3, Kafedjian Dec. ¶1.) Defendants fail to explain what Ms. Kafedjian's Tax Law Practice in New York has anything to do with being "intimately familiar" with the finances of the Pier or why her Tax Practice renders her a fact/damage witness in this matter.

16. Defendants appear to be under the belief that mere hope and speculation (e.g. *"[i]f she is as knowledgeable as* ***we think*** *she is…as to non-privileged information"*) is sufficient to render Plaintiffs' counsel a fact witness. (Dkt. #109, Hearing Transcript 3-29-21, pp. 45:15-17. See also Dkt. #87-2, pp. 17.)

17. Mr. Scarritt further states that Ms. Kafedjian *"is probably one of the two most knowledgeable witnesses (along with her father) regarding the factual allegations contained in Plaintiff's Second Amended Complaint."* (Dkt. #87-2, pp. 17.) There is no question that Ms. Kafedjian is very "knowledgeable" about the allegations in the pleadings, as she is the attorney of record and has drafted the Second Amended Complaint.

Knowledge acquired during litigation, for purposes of that litigation, obviously cannot be used to justify deposing an attorney.

18. Beginning on or about 2009, after starting her practice, Ms. Kafedjian served as counsel for the JERMC entities with respect to both matters involving the Town of Redington Shores, including the code enforcement litigation from 2014-2017, as well as other matters of civil litigation. (Ex. 3, Kafedjian Dec. ¶4.)

19. Ms. Kafedjian has been one of the attorneys representing the JERMC entities, and the Pier, for about twelve years. (Id. at ¶10.)

20. Ms. Kafedjian, however, took no part in the preparation of the JERMC entities' tax returns at any time. (Id. at ¶5.) Nor has Ms. Kafedjian represented JERMC in any tax controversy at any time. (Id at ¶6.) Ms. Kafedjian has never prepared or edited any books, financial documents, or financial statements on behalf of the JERMC entities at any time. (Id. at ¶7.) Ms. Kafedjian has had no authority or control over the finances of the JERMC entities at any time. (Id. at ¶8.) To date, Ms. Kafedjian has not even rendered the JERMC entities any tax advice at any time. (Id. at ¶9.) Ms. Kafedjian has no first-hand personal knowledge of any issue related to the finances of JERMC.

21. The laundry list of items Defendants seek to depose Ms. Kafedjian about can be obtained from Mr. Antonious, other third-party witnesses, or from document production.

22. Any "knowledge" Ms. Kafedjian has about this case was acquired from her role as JERMC's attorney and through her representation of these entities for over a decade. (Id. at ¶11.) Ms. Kafedjian is therefore unable to testify regarding such confidential client information pursuant to the RRTFB.

23. As has been stated to Defendants, Plaintiffs do not intend to call Ms. Kafedjian as a witness on their behalf in this action. (Id. at ¶12; Ex. 2, pp. 6.)

24. Mr. Scarritt further states *"But I am somewhat amazed that she is perhaps a limited partner in one of the plaintiffs and she doesn't expect to be deposed,"* and that she *"is believed to a limited partner of JERMC Management Corp."* (Dkt. #109, Hearing Transcript 3-29-21, 43:13-15; Dkt. #87-2, pp. 17.)

25. Plaintiffs provided Defendants a copy of JERMC's Partnership Agreement in the previous action, which outlines JERMC Ltd.'s ownership interests. (Ex. 4, JERMC LTD. First Restatement of the Limited Partnership Agreement, bates-stamped ***JERMC 2715-2724***). Defendants ***knew, or should have known,*** that Ms. Kafedjian is not a limited partner of JERMC Ltd., and that such a statement was untrue before making it to the Court.[4]

26. Plaintiff JERMC MANAGEMENT, CORP. is a duly registered Florida Corporation, and it managed and operated the Pier from 2000 through May 2020,

[4]The inclusion of this erroneous statement by the Defendants in the Parties' Joint Notice (Dkt. #86), without providing Plaintiffs an opportunity to respond, and which Defendants filed on the docket contrary to the undersigned's explicit request for time to continue editing, precipitated the Plaintiffs' filing of the corrected Joint Notice. (See Dkt. #87-2.)

when it was demolished. (Dkt. #74, ¶12-13.) Mr. and Mrs. Antonious are the only principles of JERMC MANAGEMENT, CORP., each owning fifty percent. (Ex. 5, Antonious Depo, 21:18-24.)

27. JERMC Ltd. is a duly registered Florida Limited Partnership and owns the premises located on the beach at 17490 Gulf Blvd., Redington Shores, FL 33708, known as The Redington Long Pier. (Dkt. 74, ¶10-11.)

28. JERMC MANAGEMENT, CORP is the General Partner of JERMC LTD, with a two percent ownership therein. (Ex. 4, JERMC LTD. Partnership Agreement.) Mr. and Mrs. Antonious, via their ownership interests in JERMC MANAGEMENT Corp., control JERMC Ltd.

29. Mr. and Mrs. Antonious, at present, have granted "The Antonious Children's Trust," a living trust, with fifty percent ownership of JERMC Ltd. as a limited partner. (Id.) This trust is controlled by Mr. and Mrs. Antonious (Grantors and Co-Trustees), and the vesting of shares to their lineal descendants as beneficiaries of this trust is within their complete discretion and control and can be amended by them during their lifetime at their pleasure. (Id; Ex. 3, Kafedjian Dec. ¶14-15.)

30. The Antonious Children's Trust, as a limited partner, has no authority to control, manage, or participate in the management of the Pier or in the JERMC entities.[5] Beneficiaries of this living trust, likewise, have no authority to control,

[5] Pursuant to Section VII(F) of the First Restatement of the Limited Partnership Agreement": "No limited partner shall have any right to be active in the conduct of the partnership's business, or have

manage, or participate in the management of the Pier or in the JERMC entities, as they have no present interest or control in JERMC or vested interest in the Trust.

31. Ms. Kafedjian is named a beneficiary of this trust, but has no past or present vested interest in any JERMC entity. (Ex. 3, Kafedjian Dec. ¶13-15.) She also has never been a stockholder, member, officer, or director of the Plaintiff entities (Ex. 3, Kafedjian Dec. ¶13.)

32. Ms. Kafedjian's status as a beneficiary of the Antonious Children's Trust, or how Mr. and Mrs. Antonious choose to bequeath their assets to their heirs, is wholly irrelevant to whether or not she is a fact witness to the events in question.

33. Mr. Antonious is a Tax Accountant and Consultant, with almost fifty years of experience and he handled the finances, record keeping, and tax preparation of the JERMC entities. Defendants deposed Mr. Antonious, for three days in February 2020, and inquired in detail regarding the finances of the JERMC entities. (Ex 5, Antonious Depo, 19-23, 62-75.)

34. On November 24, 2020, Defendants also issued eight (8) subpoenas to Plaintiffs' banks and other financial institutions for broad categories of financial records, requesting documents going back to January 1, 2012. (Ex. 6.) Plaintiffs did not move to quash these subpoenas and Defendants obtained over 4,000 pages in financial records for the JERMC entities in responses to these subpoenas.

---

the power to bind the partnership in any contract, agreement, promise, or undertaking." (Ex. 4 at pp. 2217-18.)

35. In both the instant (and previous) actions, Defendants served Plaintiffs with numerous Interrogatories and Requests for Production, and Plaintiffs duly complied with all such requests. To date, Defendants have not moved this Court to compel any discovery from Plaintiffs.[6]

36. This Court also granted Defendants an additional seven-hour deposition of Mr. Antonious over Plaintiff's objection that he had already provided deposition testimony of fifteen hours in the previous action. (Dkt. #61.)

37. Defendants previously sought to depose Mr. Antonious for a fourth full day, but inexplicably fail to proceed, and instead seek to depose his counsel.

38. Concurrent with the proclamation of their intent to depose Ms. Kafedjian, Defendants seek to disqualify Ms. Kafedjian pursuant to Rule 4-3.7:

> I have been concerned from our entry into the case about the likely conflict of interest you, Jackie, have as both a material witness and an attorney of record. You are no doubt familiar with the Advocate Witness rule, which is a principle prohibiting an attorney from serving as an advocate and a witness in the same case. This is codified in Rule 4-3.7 of the Rules Regulating the Florida Bar. How do you propose to ethically serve in both roles? (Ex. 2, March 9, 2021 Email from Scarritt to Kafedjian at pp. 3.)
>
> Upon completion of your deposition, we will analyze whether your apparent conflict of interest is insurmountable, and if we find that it is, we will move to disqualify you from serving as counsel." (Ex. 2, March 25, 2021 Email from Scarritt to Kafedjian at pp. 12.)

[6] Defendants did file a Motion to Compel financial documents and tax returns from Plaintiffs in the previous action. (***19-cv-00688 (TPB)(AAS)***, Dkt. #124.) When the previous action was dismissed, that motion was rendered moot. In the instant action, this Court gave the parties until February 5, 2021 to re-serve prior discovery requests and until March 5, 2021 to file any motions to compel relating to such reserved requests. (Dkt. #61.) Defendants re-served Plaintiffs with requests, Plaintiffs timely responded, and the Defendants did not re-file their motion to compel.

> [H]er obvious conflict of interest… (Dkt. #87-2, Joint Notice, pp. 18.)
>
> [I]f she is as knowledgeable as we think she is, and that is as to non-privileged information, the rule is very clear, the rule regulating Florida Bar says thou shall not. It doesn't say if you feel like it or, you know, depends on what you ate for breakfast in the morning, it says thou shall not serve as a trial advocate and a witness in the case. (Dkt. #109, Hearing Transcript 3-29-21, 44:15-21.)

39. Mr. Scarritt purports to create a conflict of interest where there is none, and misstates both the substance and purpose of Rule 4-3.7 of the RRTFB as a basis for Defendants to disqualify Ms. Kafedjian. (C.f. Section III below.)

**MEMORANDUM OF LAW**

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding the disclosure or discovery……[or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Pro. 26(c)(1). "In addition to requiring good cause, this circuit has also required the district court to balance the interests of those requesting the order." McCarthy v. Barnett Bank of Polk Cty., 876 F.2d 89, 91 (11th Cir. 1989). The Court may limit the extent of discovery if it determines that . . . "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive…or (iii)the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. Pro. 26(b)(2)(C).

The moving party for a protective order generally bears the burden of establishing entitlement to a protective order. Ekokotu v. Fed. Express Corp., 408 F. App'x 331, 336 (11th Cir. 2011). "[W]hile nothing in the Federal Rules of Civil Procedure prohibits the deposition of a party's attorney, federal courts generally disfavor such depositions and permit them in only limited circumstances." Finster v. U.S. Bank Nat'l Ass'n, No. 3:15-cv-1044-J-34MCR, 2016 U.S. Dist. LEXIS 194795, at *4-5 (M.D. Fla. Oct. 31, 2016)(int. cit. and quot. omit.) "As an officer of the court, a lawyer is bound by the duty to protect their client's interests while promoting the advancement of justice…[which] provides a lawyer 'with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" Centennial Bank v. Servisfirst Bank, No. 8:16-cv-88-T-36JSS, 2019 U.S. Dist. LEXIS 233534, at *9 (M.D. Fla. July 26, 2019), citing Hickman v. Taylor, 329 U.S. 495, 510, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

Therefore, a higher burden is placed on a party seeking to depose opposing counsel, because "depositions of attorneys who represent parties in an action are an invitation to harass the attorney and the party, to cause delay, and to disrupt the case, [a] party seeking to depose counsel must demonstrate that the deposition is the only practical means available for obtaining the information…[t]he party must also demonstrate that the information sought is relevant and non-privileged, and that the information is crucial to the preparation of the case….[and that the need must

outweigh the dangers of deposing a party's attorney. Romero v. Liberty Mut. Fire Ins. Co., No. 6:18-cv-1551-Orl-41GJK, 2019 U.S. Dist. LEXIS 182069, at *6-8 (M.D. Fla. Aug. 1, 2019)(int. cit. and quot. omitted)(emphasis added). The Circuits are split as to whether to apply the Shelton test or the “flexible” approach in determining whether or not to allow the deposition of a party’s attorney.[7] See e.g. Fletcher v. Great Am. Ins. Co., 2010 U.S. Dist. LEXIS 149421, *5-7 (M.D. Fla. June 8, 2010); Covington v. Walgreen Co., No. 1:11-CV-22900, 2012 U.S. Dist. LEXIS 80216, at *9 (S.D. Fla. June 11, 2012). The Eleventh Circuit has not ruled on the issue. Id. In Shelton, the Court held that:

> We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances. Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy….Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing

[7] Shelton Test: it must be shown "(1) that no other means exist to obtain the information than to depose opposing counsel . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1987)(internal citation omitted). “Flexible” Approach: “the Second Circuit opted for a more "flexible" approach under which the court should take into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship…[r]elevant factors include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. Fletcher v. Great Am. Ins. Co., No. 3:09-cv-324-J-25JRK, 2010 U.S. Dist. LEXIS 149421, at *6 (M.D. Fla. June 8, 2010)(int. cit. and quot. omit.)

> opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). The test generally applied in this Circuit requires the party seeking the deposition of counsel to show:

> (1) [T]he need for the deposition and that this is the only practical means of getting the information; (2) the information is relevant and its need outweighs the dangers of deposing a party's attorney; and (3) the information sought during the deposition will not invade the attorney-client privilege or the attorney's work product.

SCCI, Inc. v. Russell, No. 5:20-cv-348-Oc-30PRL, 2021 U.S. Dist. LEXIS 29259, at *2 (M.D. Fla. Feb. 17, 2021). See also, e.g., Doe v. Sch. Bd., No. 18-25430-CIV-O'SULLIVAN, 2020 U.S. Dist. LEXIS 47561, at *8 (S.D. Fla. Mar. 19, 2020)(int. cit. and quot. omit.) Importantly, Defendants easily fail under any test employed, whether it is the test used in this circuit, the Shelton test, or the "flexible approach."

## I. DEFENDANTS HAVE FAILED TO MEET THEIR HIGH BURDEN TO DEMONSTRATE THAT MS. KAFEDJIAN IS THE ONLY PRACTICAL MEANS FOR OBTAINING INFORMATION ABOUT THE MATTERS OF INQUIRY THEY SEEK, OR EVEN THAT MS. KAFEDJIAN HAS FIRST-HAND PERSONAL KNOWLEDGE ABOUT ANY FACT WHICH THEY SEEK TO DEPOSE HER ABOUT.

Where Defendants are unable to demonstrate that the deposition of a party's counsel is the only means of obtaining the information, or such testimony would be duplicative, Courts prohibit the deposition of counsel. See e.g. Romero v. Liberty Mut. Fire Ins. Co., No. 6:18-cv-1551-Orl-41GJK, 2019 U.S. Dist. LEXIS 182069, at *8

(M.D. Fla. Aug. 1, 2019)(grating MPO where Defendant failed to demonstrate that the deposition of counsel is the "only practical means available to obtain the information it seeks."); LaJoie v. Pavcon, Inc., CASE NO. 97-312-CIV-FTM-25D, 1998 U.S. Dist. LEXIS 23175, at *3-4 (M.D. Fla. June 23, 1998)(granting MPO for attorney deposition where party "has not shown the Court a strong need for the deposition of [counsel] nor has it shown that it has attempted to obtain this type of information from other sources…[and] has not shown that this deposition is the only practical means of obtaining this information."); Fletcher v. Great Am. Ins. Co., No. 3:09-cv-324-J-25JRK, 2010 U.S. Dist. LEXIS 149421, at *9 (M.D. Fla. June 8, 2010)(finding that allowing counsel "to be deposed would only create the opportunity for protracted disputes regarding privileged information when Defendant has not shown a sufficient need to depose him."); Centennial Bank v. Servisfirst Bank, No. 8:16-cv-88-T-36JSS, 2019 U.S. Dist. LEXIS 233534, at *9 (M.D. Fla. July 26, 2019)(finding a deposition of counsel would be unnecessarily duplicative of the testimony of other witnesses and documents submitted, and that Centennial had not "met the higher burden of showing that a deposition of opposing counsel is necessary, including that it is "the only practical means available for obtaining the information.")(int. cit. omit.)

Even where an attorney is involved with the underlying matters of the litigation itself, courts in this Circuit have held that "even though an attorney was intimately involved in material events, he is not a 'necessary witness' if another

witness is capable of testifying to the matters at issue." Etkin & Co. v. SBD Ltd. Liab. Co., No. 11-21321-CIV, 2012 U.S. Dist. LEXIS 158364, at *10-11 (S.D. Fla. Nov. 5, 2012), citing Breckenridge Pharm. v. Metabolite Labs., Inc., No. 04-80090-CIV-Cohn, 2007 U.S. Dist. LEXIS 7775, 2007 WL 433084, *2 (S.D. Fla 2007); [8]

In Fletcher v. Great Am. Ins. Co., an insurance bad faith case, the Defendant sought to depose opposing counsel in "hopes of discovering evidence to support its contention that the Final Judgment After Default in the First Action is unreasonable, and that the Assignment of Rights was not made in good faith." Supra at *5 (M.D. Fla. June 8, 2010). This Court found that the deposition of Plaintiffs' counsel "would entail an inappropriate burden and hardship on Plaintiff." Id. at 7. This Court emphasized that, "[i]mportantly, there are ways to obtain the information Defendant seeks…[and] in fact, it appears Defendant has already availed itself of these sources of information. Id. Plaintiffs had complied with all discovery requests and Defendant had deposed witnesses about the issues in question. Id. The Court found that the Defendants failed to meet their burden under either test to establish that a deposition of Plaintiffs' counsel was proper. Id. at 6-7.

[8] Collecting cases: Allstate Ins. Co. v. English, 588 So. 2d 294, 295 (Fla. 2d DCA 1991); Laura McCarthy, Inc. v. Merrill-Lynch Realty/Cousins, Inc., 516 So. 2d 23 (Fla. 3d DCA 1987); Fleitman v. McPherson, 691 So. 2d 37 (Fla. 2st DCA 1997); City of Lauderdale Lakes v. Enter. Leasing Co., 654 So. 2d 645 (Fla. 4th DCA 1995). See also Pandora Jewelers 1995, Inc. v. Pandora Jewelry, Ltd. Liab. Co., No. 09-61490-CIV-COOKE/B, 2010 U.S. Dist. LEXIS 146927, at *4-5 (S.D. Fla. July 23, 2010)(finding that party "failed to establish that it has no other means to obtain the information it seeks from opposing counsel," and where they "previously identified" another witness who was knowledgeable.)

Furthermore, in Covington v. Walgreen Co., Covington sought to depose Walgreens' in-house litigation counsel about representations made in letter preceding the litigation. Supra at *9 (S.D. Fla. June 11, 2012). The Court found that counsel had "no first-hand personal knowledge of the facts and that any facts he obtained were from his investigation of this matter as Walgreens' attorney." Id. The Court found that Covington "failed to sufficiently demonstrate that the deposition of [counsel] is the only practical means of obtaining the underlying facts regarding Walgreens' purported misrepresentations…[counsel] has no first-hand personal knowledge of the underlying facts and that Walgreens has made available to Covington its fact witnesses, i.e., those witnesses with actual first-hand personal knowledge of the underlying facts in this litigation." The Court further found that counsel's representation of an employee statement in a letter is "too slim to support the extreme step of taking the deposition of Walgreens' senior in-house attorney." Id. at 10. See also Finster v. U.S. Bank Nat'l Ass'n, No. 3:15-cv-1044-J-34MCR, 2016 U.S. Dist. LEXIS 194795, at *9 (M.D. Fla. Oct. 31, 2016)(finding two voice mail messages by counsel also too slim to support the deposition of Plaintiffs' attorney).

In the instant case, the Defendants' subpoena is **completely baseless**, as they seek to wrongfully dispense with the proper routes of discovery all together, and instead, to simply depose Plaintiffs' counsel about every issue of this case. Defendants have failed to show that Ms. Kafedjian has any first-hand knowledge

about any issue related to the finances of JERMC. They have failed to show that there is any information that they seek from her which is not obtainable from other witnesses, namely Mr. Antonious, from third-party subpoenas, or from document production. They fail to show that Plaintiffs did not duly comply with any discovery requests made on them. Defendants have made unfounded contentions about Ms. Kafedjian, apparently, in the hopes that mere speculation would be sufficient to support their subpoena. The haphazard manner in which they approached this issue supports the conclusion that Defendants' true intent is to depose her in order to find a way to disqualify her. In response to Ms. Kafedjian's statements that she neither had any interest in JERMC nor any first-hand personal knowledge regarding JERMC's finances, Mr. Scarritt stated "Your Honor, that's exactly the reason why we want to take her deposition, we want to have her under oath when she makes statements like that." (Dkt. #109, Hearing Transcript 3-29-21, pp. 45:20-22.) If Ms. Kafedjian's statements as an officer of the Court were insufficient for Mr. Scarritt, he now has her declaration under oath.

## II. MS. KAFEDJIAN OBTAINED ANY INFORMATION ABOUT JERMC'S FINANCES, OR ANY DAMAGE ISSUES, BY VIRTUE OF HER ROLE AS JERMC'S ATTORNEY. A DEPOSITION REGARDING THE NUMEROUS MATTERS OUTLINED BY DEFENDANTS IS UNDULY BURDENSOME, ANNOYING, OPPRESSIVE, AND AN ATTEMPT BY DEFENDANTS TO HARRASS PLAINTIFFS.

Ms. Kafedjian, as a member of the Florida Bar, is bound by the Rules Regulating the Florida Bar regarding a duty of confidentiality to her client as follows:

> RULE 4-1.6 CONFIDENTIALITY OF INFORMATION (a) Consent Required to Reveal Information. A lawyer must not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent.
>
> ….
>
> A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation….This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively…The principle of confidentiality is given effect in 2 related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose confidential information except as authorized or required by the Rules Regulating The Florida Bar or by law.

Defendants seek to depose Ms. Kafedjian about knowledge acquired by virtue of her role as the attorney for the JERMC entities since 2009, which would be subject to Ms. Kafedjian's duty of confidentiality. Defendants outline 80 broad-reaching matters of inquiry, which almost all seek inquiry about "details regarding documents," and for the most part, ***do not specify the documents in question***. Matters #22-80 all seek "details" about unspecified documents, leases, and contracts. It appears that, a la Shelton, Defendants have improperly determined that it is simpler for them to dispense with discovery, and simply depose Plaintiffs' counsel about the

documentary evidence in this case. Defendants woefully fail to meet their high burden of demonstrating that the information they seek in #22-80 is not obtainable from the testimony of other witnesses or through documentary production, that Ms. Kafedjian has any first-hand personal knowledge as to these documents, or that any testimony about these matters would not be subject to her duty of confidentiality.

Defendants also seek inquiry about correspondence and documents Ms. Kafedjian prepared on behalf of her clients. Defendants' items of inquiry #7-#19 all relate to questions about correspondence Ms. Kafedjian wrote, as the attorney of the JERMC entities to the Florida DEP about the Pier within six months of the start of the litigation with the Town. (Ex. 3, Kafedjian Dec. ¶17-18, Ex. A-B.) This correspondence was produced to Defendants in the previous action (***JERMC 192-195***), and the Town and Board was copied directly on one of the letters. (Id.) Defendants' items of inquiry #20-21 relate to Plaintiffs' press-release that was sent to local government entities, including the Town, and to the media. (Id. at ¶19, Ex. C.) This was also produced to Defendants in the previous action (***JERMC 314***). Defendants had the opportunity to depose Mr. Antonious about these documents in February 2020, although it appears they did not. They have an additional seven hours to inquire about these matters with him. With respect to matters #4-6, Defendants likewise seek to inquire about "correspondence" from the "Antonious Law Firm" to various entities but still fail to

specify what documents they reference. Ms. Kafedjian's testimony about such correspondence is subject to her duty of confidentiality.

The remaining matters Defendants outline are: irrelevant to this case (matter #1); based on inaccurate speculation regarding Ms. Kafedjian's interest in the JERMC entities, and which has been fully addressed in her Declaration (matter #2); or which were already addressed by Mr. Antonious at his deposition (e.g. matter #3, c.f. Ex 5, Antonious Depo, 13:24 - 14:4).

Further, counsel for Defendants openly acknowledges the extent to which the deposition of Ms. Kafedjian will be annoying, oppressive, and burdensome on the Plaintiffs. (See Ex. 2, pp. 12; Dkt. #109, Hearing Transcript 3-29-21, 43:17-22.) By serving a subpoena with such overbroad matters of inquiry on Plaintiffs' counsel, there is no question that counsel for Defendants have simply dispensed with any pretenses about their duties as officers of the court to take actions based on the good faith belief that they are lawful.

## III. DEFENDANTS' DESIRE TO DEPOSE MS. KAFEDJIAN IN ORDER TO DISQUALIFY HER IS IMPROPER AND CONTRARY TO LAW

Mr. Scarritt misstated Rule 4-3.7 at the March 29th hearing, stating that if Ms. Kafedjian was knowledgeable *"as to non-privileged information, the rule is very clear, the rule regulating Florida Bar…says thou shall not serve as a trial advocate and a witness in the case."* (Dkt. #109, Hearing Transcript 3-29-21, 44:15-21.). Defendants have either

completely misunderstood, or intentionally misrepresented Rule 4-3.7 of the RRTFB, (c.f. Dkt. #109 at pp. 44:17-21) which provides:

> (a) When Lawyer May Testify. A lawyer shall not act as advocate at a trial in which **the lawyer is likely to be a necessary witness on behalf of the client unless**: (1) the testimony relates to an uncontested issue; (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; (3) the testimony relates to the nature and value of legal services rendered in the case; or **(4) disqualification of the lawyer would work substantial hardship on the client.**

"The focus of the analysis under *Rule 4-3.7* is on the prejudice to the client, not prejudice to the opposing side who may call the attorney as a witness…[t]hus, where the client does not intend to call his attorney as a witness, *Rule 4-3.7* is not implicated."[9] Etkin & Co. v. SBD Ltd. Liab. Co., No. 11-21321-CIV, 2012 U.S. Dist. LEXIS 158364, at *8-9 (S.D. Fla. Nov. 5, 2012) Wherefore, "[t]he rule requiring a lawyer to withdraw when he expects to be a witness in a case was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." Allstate Ins. Co. v. English, 588 So. 2d 294, 295-96 (2nd DCA 1991)(quashing order disqualifying counsel), citing Arcara v. Philip M. Warren, P.A., 574 So. 2d 325, 326 (4th DCA 1991).[10] See also: Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,

---

[9] The rules require withdrawal in such a case because the "dual role could prejudice the opposing party by bolstering the lawyer's testimony for his client because it comes from an advocate." AlliedSignal Recovery Tr. v. AlliedSignal, Inc., 934 So. 2d 675, 678 (2nd DCA 2006).

[10] Collecting cases: Cazares v. Church of Scientology of California, Inc., 429 So. 2d 348, 350 (5th DCA), review denied, 438 So. 2d 831 (Fla. 1983); Beavers v. Conner, 258 So. 2d 330 (3d DCA 1972) (opposing counsel should not be permitted to force disassociation between counsel and client just by calling counsel as adverse witness); Hill v. Douglass, 248 So. 2d 182 (1st DCA 1971), quashed on other grounds, 271 So. 2d 1 (Fla. 1972) (lawyer need not withdraw from case where possibility exists

No. 04-80090-CIV-COHN, 2007 U.S. Dist. LEXIS 7775, at *9 (S.D. Fla. Feb. 2, 2007)(denied motion for disqualification and motion to compel deposition of attorney); Humphreys v. Ferrero, No. 08-60802-CIV-MARTINEZ-BROWN, 2008 U.S. Dist. LEXIS 129170, at *5 (S.D. Fla. Oct. 20, 2008)(denying motion to disqualify counsel). Moreover, deposing an attorney to obtain disqualification when the litigation has progressed substantially is most improper:

> Indeed, it was suggested during the April 22, 2010 hearing that the deposition of Mr. Russell may lead to a motion that he be disqualified. Given that dispositive motions have already been filed, the proceedings have progressed to the point that the disqualification of Plaintiff's counsel would be highly prejudicial, which is another factor that weighs against allowing him to be deposed.

Fletcher v. Great Am. Ins. Co., supra *10 (M.D. Fla. June 8, 2010).[11]

Here, like in Fletcher, this case has already been subject to many dispositive motions (in both this and the predecessor case), Ms. Kafedjian has been litigating this matter since July 2018 when the Notice of Claim was filed, and "the proceedings have progressed to the point that the disqualification of Plaintiff's counsel would be highly prejudicial, which is another factor that weighs against allowing [her] to be

---

that he or she might be called to testify by adversary as this would create situation in which adversary could disassociate client's chosen counsel).

[11] See also Etkin & Co. v. SBD Ltd. Liab. Co., supra at *10 (S.D. Fla. Nov. 5, 2012)("Even if *Rule 4-3.7* did apply, the undersigned's analysis concludes that disqualification would not be warranted because Hall is not a necessary witness; disqualification would work a substantial hardship on Hall's client due to the undue delay in filing the motion for disqualification and the extent of discovery and the timing of its completion."); Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., supra at *9 (S.D. Fla. Feb. 2, 2007)(finding that a motion to disqualify counsel filed two and a half years after the case was filed should have been filed "much earlier in the litigation," exhibited a failure to "exercise due diligence, and would have been denied on the merits as well.")

deposed." Id. Defendants seek this deposition solely to support a baseless effort to disqualify counsel. This improper tactic has been uniformly rejected.

## REQUEST FOR ATTORNEYS' FEES AND COSTS

In Dkt. #101, this Court held that: "[g]oing forward, absent exceptional circumstances, the court will order the non-prevailing party for any future discovery motion to reimburse the prevailing party's attorney's fees and costs in connection with the motion." (Dkt. #101 at pp. 8.)[12] Plaintiffs have incurred $10,561 in fees and costs in connection with the improper issuance of the subpoena to Ms. Kafedjian. (Ex. 7, Attorneys' Fees/Costs.)

## CONCLUSION

For these reasons, Plaintiffs respectfully request this Court to grant this motion or for any relief this Court deems just and proper.

| | |
|---|---|
| /s/ Michael P. Beltran | /s/ Jacqueline S. Kafedjian |
| Michael P. Beltran, Esq. | Jacqueline S. Kafedjian, Esq. |
| FBN: 0093184 | FBN: 0055341 |
| Beltran Litigation, P.A. | The Antonious Law Firm |
| 1101 East Cumberland Ave., #712 | 62-26 Myrtle Avenue, Suite 105 |

[12] "It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant." Serra Chevrolet, Inc. v. GMC, 446 F.3d 1137, 1147 (11th Cir. 2006)(int. cit. omit.) Pursuant to 28 U.S.C. § 1927: "Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (1988). Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1544 (11th Cir. 1993). Moreover, the Court has the inherent power to sanction litigants who act in bad faith to obstruct discovery. Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44, 111 S. Ct. 2123, 2132 (1991)). This inherent power "derives from the court's need 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)(citing Chambers, supra at 43).

Tampa, FL 33602
Ph: 813.870.3073
mike@beltranlitigation.com
*Attorney for Plaintiffs*

Glendale, NY 11385
Ph: 718.456.5500; Fax: 718.335.8369
jackie@antoniouslawfirm.com
*Attorney for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01 (g)

I certify that on April 20, 2021, I conferred by telephone with counsel for the Defendants, Tom Scarritt, regarding this motion, and he does not consent to the relief requested herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of April 2021, the foregoing was filed with the Middle District of Florida using the ECF system, which will provide an ECF copy to Attorneys for Defendants:

> Jay Daigneault, Esq., Erica F. Augello, Esq., and Randy D. Mora, Esq., TRASK DAIGNEAULT, LLP, 1001 S. Ft. Harrison Avenue, Ste. 201 Clearwater, Florida 33756 via electronic mail to jay@cityattorneys.legal, erica@cityattorneys.legal, and randy@cityattorneys.legal.
>
> Thomas Scarritt, Esq. and Martin J. Champagne, Esq., SCARRITT LAW GROUP, P.A., 1405 West Swann Avenue, Tampa, Florida 33606 via electronic mail to courtpleadings@scarrittlaw.com and gk@scarrittlaw.com.

/s/ Michael P. Beltran
Michael P. Beltran, Esq.

/s/ Jacqueline S. Kafedjian
Jacqueline S. Kafedjian, Esq.